UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 12-80931-CV-HURLEY/HOPKINS

LENNON ANDERSON,

    Plaintiff,

v.

JILL S. CREECH,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

**THIS CAUSE** is before the Court upon Defendant Jill S. Creech's Motion to Dismiss [ECF No. 42]. The motion is fully briefed and ripe for adjudication. For the reasons to follow, the Court will grant the motion.

### BACKGROUND

Plaintiff, Lennon Anderson, is a former employee of the Southeast District of the Florida Department of Environmental Protection ("FDEP"), an agency of the state of Florida. Prior to his termination, Plaintiff was a Program Administrator of the Air Division. Defendant was appointed Director of the Southeast District in 2011 and in that capacity held a supervisory role over Plaintiff. On August 13, 2012, Plaintiff met with Defendant and Defendant offered him the option of resigning his position or being terminated. Am. Compl., Ex. 21, at 36 [ECF No. 20-1].[1] When Plaintiff asked for the reason for his termination, Defendant stated that Plaintiff's staff did not want to continue to

---

[1] The page number in citations to the Amended Complaint refers to the page number indicated in the header of the documents rather than the page numbers at the bottom of the page.

work under him, that several members of his staff had left or were prepared to quit, and that Plaintiff did not have the leadership skills necessary for his position. *Id.*

Plaintiff's termination became effective on August 31, 2012. On September 4, 2012, Plaintiff commenced this action by filing a pro se complaint against the FDEP. Plaintiff subsequently amended the complaint and replaced the FDEP with Creech. Plaintiff asserted a claim for wrongful termination, alleging that Defendant had violated 42 U.S.C. §§ 1981[2] and 1983[2] by infringing his right to freedom of contract and his constitutional right to equal protection of the laws under the Fourteenth Amendment.

## JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 because Plaintiff's claims arise under the Constitution and laws of the United States. Venue is proper under

---

[2]Section 1981 provides as follows:

> All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . . The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law.

Because § 1981 does not provide an implicit cause of action against state actors, § 1983 is the exclusive federal remedy for a state actor's violation of rights guaranteed under § 1981. *Bryant v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009).

[2]Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law [or] a suit in equity . . . .

2

28 U.S.C. § 1391(b)(2) because substantial portion of the events giving rise to this action occurred within this district.

## DISCUSSION

On this motion to dismiss, the Court accepts the factual allegations in the Amended Complaint as true and views all inferences in the light most favorable to the non-moving party. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient, *Ashcroft v. Iqbal*, 556 U.S. 662, ----; 129 S. Ct. 1937, 1949 (2009), and regardless of the alleged facts, a court may dismiss a complaint on a dispositive issue of law. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993). In addition, a Court must dismiss a complaint "when its allegations—on their face—show that an affirmative defense bars recovery on the claim." *Marsh v. Butler*, 268 F.3d 1014, 1022 (11th Cir. 2001).

To state a claim under 42 U.S.C. § 1983, Plaintiff must show a violation of a constitutional right that was committed by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). Defendant argues that Plaintiff's own allegations demonstrate that Defendant is entitled to the affirmative defense of qualified immunity. Qualified immunity arises from "'the need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority.'" *Marsh*, 268 F.3d at 1022 n.8 (quoting *Butz v. Economou*, 438 U.S. 478, 506 (1978)).

In evaluating a qualified immunity defense, the Court first asks whether a public official was engaged in a discretionary function in taking the action that forms the basis of a complaint.

*Crawford v. Carroll*, 529 F.3d 961, 977 (11th Cir. 2008). The Court next performs a two-part inquiry, asking whether, taken in the light most favorable to the allegedly injured party, the facts alleged demonstrate the violation of a constitutional right and, if so, whether the constitutional right was clearly established at the time of the alleged violation. *Id.* The primary effect of the qualified immunity doctrine is therefore to create an additional layer of protection from liability for public officials engaged in discretionary functions by requiring not only an underlying violation but also that the right violated be clearly established at the time of the offense.

The constitutional violation asserted in the instant case is racial discrimination. "[A] plaintiff can establish a prima facie case of discrimination through either direct evidence of discrimination or a variation of the four-part test . . . for circumstantial evidence." *Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999); *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Direct evidence of discrimination must demonstrate "a discriminatory or retaliatory attitude correlating to the discrimination or retaliation complained of by the employee." *Caban-Wheeler v. Elsea*, 904 F.2d 1549, 1555 (11th Cir. 1990). "[T]he evidence must indicate that the complained-of employment decision was *motivated* by the decision-maker's [bias]." *Damon*, 196 F.3d at 1358-59. "As a result, 'only the most blatant remarks whose intent could be nothing other than to discriminate on the basis of [race]' will constitute direct evidence of discrimination." *Id.* at 1359 (quoting *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081-82 (11th Cir. 1990)). Alternatively, to plead racial discrimination circumstantially "a plaintiff must show (1) she belongs to a protected class; (2) she was qualified to do the job; (3) she was subjected to adverse employment action; and (4) her employer treated similarly situated employees outside her class more favorably."

4

*Crawford*, 529 F.3d at 970;[3] *see also McDonnell Douglas,* 411 U.S. at 802. From there, the burden shifts to the defendant to show a "legitimate, non-discriminatory reason for its employment action," and then back to the plaintiff to show "that the reason provided by the defendant is a pretext for unlawful discrimination." *Burke-Fowler v. Orange Cnty., Fla.*, 447 F.3d 1319, 1323 (11th Cir. 2006).

Upon review of the Amended Complaint, the Court finds that Plaintiff has failed to allege racial discrimination either directly or circumstantially. Plaintiff has therefore failed to allege the deprivation of a constitutional right, and his claims under §§ 1981 and 1983 both fail as a matter of law.

### A.   *Direct Evidence of Racial Discrimination*

Plaintiff relies on the following statement as direct evidence[4] of discrimination: "Lennon[,] you do not have leadership skills. You were not born with leadership skills[,] and I cannot teach you leadership skills. You are not a good fit for management at SED." Am. Compl. ¶ 172 [ECF No. 20]. This statement falls well short of the standard required for direct evidence. Direct evidence must establish a fact "'without inference or presumption.'" *Burrell v. Bd. of Trs. of Ga. Military Coll.*, 125 F.3d 1390, 1393 (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 n.6 (11th Cir. 1987)). The statement that an individual was not born with leadership skills could only suggest racial bias if one infers or presumes that the speaker believes that all of the members the individual's racial

---

[3]"These elements also apply to a claim of race discrimination under § 1983 . . . ." *Id.*

[4]Although the applicable legal standards refer to direct and circumstantial *evidence*, the Court emphasizes that at this stage of the proceeding it engages in no weighing of evidence but instead accepts every factual allegation in the Amended Complaint as true.

group were also "not born with leadership skills." Nothing in the statement allows such a reading. An alternative reading—and indeed the most natural reading—is simply that Defendant believes Plaintiff, individually and wholly independent from his racial group, lacks leadership skills. Under Plaintiff's interpretation, any statement critical of a member of any group would be direct evidence of animus toward that group. The law does not support such an expansive view. Plaintiff therefore fails to state a claim of racial discrimination by direct evidence.

    **B.**  ***Circumstantial Evidence of Racial Discrimination***

    For the purpose of the instant motion, Defendant challenges the sufficiency Plaintiff's claims only with respect to the fourth element of the circumstantial-evidence inquiry—specifically, that the employer "treated similarly situated employees outside her class more favorably." *Crawford*, 529 F.3d at 970. To evaluate this element, the Court must ascertain valid "comparators" who are "similarly situated to the plaintiff in all relevant respects," *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1326 n.17 (11th Cir. 2011), including having "been 'involved in or accused of the same or similar conduct'" that produced the adverse employment action. *Id.* (quoting *Holifield v. Reno*, 115, F.3d 155, 1562 (11th Cir. 1997)). "[T]he comparators must be similar enough that any differences in their treatment cannot be attributed to other variables." *Silverman v. Bd. of Educ.*, 637 F.3d 729, 742 (7th Cir. 2011).

    Defendant argues that the crucial characteristic of Plaintiff in the instant case is that he had a history of unsatisfactory reviews in leadership and interpersonal skills and faced problems regarding the willingness of subordinates to continue to work under him. Specifically, in September 2011 Defendant placed Plaintiff on a performance improvement plan designed to "improve

6

interactions with . . . fellow [program administrators and staff]." Am. Compl. Ex. 78, at 36 [ECF No. 20-2]. By March 2012, Plaintiff's reviews noted improvement but still aimed to improve Plaintiff's "managerial repertoire" and to continue to improve Plaintiff's interactions with staff. Am. Compl. ¶ 131 [ECF No. 20]. Throughout this period, Defendant advised Plaintiff to consider his other employment options in light of her view that "he was not a good fit for management" at the Southeast District. *Id.* ¶¶ 126-127 [ECF No. 20].

In addition to these issues regarding performance, in the month leading up to his termination Plaintiff experienced difficulty managing his subordinates. Plaintiff had implemented a rigorous time-reporting protocol that required his subordinates to submit "daily accountability reports" logging to the minute tasks on which they spent greater than fifteen minutes. Am. Compl. ¶ 8, Exs. 2-3 [ECF No. 20]. Plaintiff began to admonish staff that were behind on these reports and to question the time spent on particular tasks. *Id.* ¶¶ 9-19, 27-28, 147. During Plaintiff's tenure, three members of his staff left his department, *id.* ¶¶ 146-55, and as of the date Defendant terminated his employment, Plaintiff was attempting to file letters of concern regarding an additional two. Plaintiff stated during the termination meeting that one of his remaining staff members was prepared to quit rather than continue working for Plaintiff.[5] Am. Compl. Ex. 21 [ECF No. 20].

Plaintiff has alleged five possible comparators. Two, Jennifer Smith and John Armstrong, issued written reprimands and Letters of Concern just as Plaintiff had intended to do shortly before

---

[5]Only three of Plaintiff's eight subordinates who had participated in the daily accountability reports as of October 21, 2011 had done so without either leaving their positions or being issued letters of concern by Plaintiff by the time of Plaintiff's termination. *See* Am. Compl. Ex. 85 at 37 [ECF No. 20-1].

7

he was terminated. Plaintiff argues that this commonality makes them valid comparators. However, the fact that they took a similar course of action broadly by disciplining subordinates does not make them "similar enough that any differences in their treatment cannot be attributed to other variables," *Silverman*, 637 F.3d at 742, because of differences in the circumstances surrounding their issuance of reprimands. Plaintiff has not alleged that either Smith or Armstrong had difficulty retaining personnel or that they had a history of difficulties in leadership and interpersonal skills. In addition, Plaintiff does not allege that the FDEP's human resources department had reservations about the reprimands issued by Smith and Armstrong as it did regarding Plaintiff's own conduct.[6] Thus, Plaintiff's allegations do not eliminate the possibility that the disparate treatment he received after he revealed his intention to issue reprimands was a result of variables other than racial bias.

Plaintiff also offers William Forrest as a comparator, noting that he was given "the opportunity to leave the Department with dignity," received an honorary luncheon, and was given an engraved clock. Plaintiff argues that Defendant's failure to hold a luncheon in his honor and give him an engraved clock demonstrates her racial bias against him. Am. Compl. ¶¶ 44, 189 [ECF No. 20]. However, Plaintiff does not allege that their employments were terminated under similar circumstances. To the contrary, Plaintiff alleges that he declined the opportunity to resign rather than

---

[6]The reprimand issued by Smith concerned an employee who had been tardy seven times in fourteen days. Am. Compl. Ex. 101 at 103 [ECF No. 20-2]. The reprimand issued by Armstrong came after numerous complaints from other employees. Am. Compl. Ex. 101 at 103 [ECF No. 20-2]. In contrast, Plaintiff's letter of reprimand concerned a conflict between himself and one of his subordinates, Nicole Stallings, and his subjective belief that Stallings had treated him discourteously and disrespectfully. Am. Compl. ¶ 18 [ECF No. 20]. In addition, Plaintiff had initially intended to terminate Stallings, and a human resources representative advised against that action, and Plaintiff ultimately contacted an employee relations consultant in Tallahassee rather than one within the Southeast Division to review his letters of concern. *Id.* at ¶¶ 29-33, 38-40.

be terminated, *id.* ¶ 46, whereas Forrest chose to retire. *Id.* ¶ 150.

Finally, Plaintiff argues that Lee Hoefert and Nicole Stallings are valid comparators. However, the only commonality Plaintiff cites is that they are all FDEP employees subject to the same internal regulations. Clearly this commonality is insufficient to establish a proper comparator. In fact, neither Stallings nor Hoefert hold management positions or engaged in conduct similar to Plaintiff's. *See Horn v. United Parcel Servs., Inc.*, 433 F. App'x 788, 794-95 (11th Cir. 2011) (rejecting purported comparators "on the basis of material differences in rank, responsibilities, and supervisors"). Plaintiff has therefore failed to identify any valid comparator and has failed to plead a prima facie case of racial discrimination under *McDonnell-Douglas*.[7]

Even if Plaintiff had stated a prima facie case, this would merely shift the burden to Defendant to "articulate a legitimate, non-discriminatory reason for the challenged employment action." *Chapman v. AI Transport*, 229 F.3d 1012, 1025 (11th Cir. 2000). Plaintiff's own allegations include the "legitimate, nondiscriminatory reason" for Defendant's action—i.e., that his staff did not want to work for him, that he had insufficient leadership skills, and that he had contacted Tallahassee regarding his desire to issue letters of concern to two of his remaining subordinates. Am. Compl., Ex. 21, 36 [ECF No. 20-1]. The burden thus shifts back to Plaintiff to allege that the non-discriminatory reason offered by Defendant is merely a pretext. Other than the

---

[7]Plaintiff also discusses Linda Brien, Joe Lurix, and Smith, who received high performance evaluations under both Defendant and Defendant's predecessor as Director of the Southeastern District. Am Compl. ¶187 [ECF No. 20]. Defendant argues that Defendant "mimicked" the high ratings for the white program administrators but did not do so for Plaintiff. Again, Plaintiff has failed to allege that any of these individuals engaged in similar conduct to Defendant, thus rendering them invalid as comparators.

9

Order Granting Defendant's Motion to Dismiss
Anderson v. Creech
Case No. 12-cv-80931-DTKH

allegations previously discussed, the only allegations Plaintiff offers are (a) that Defendant did not present evidence to him to support her decision to terminate his employment[8] and (b) that an evaluation months earlier rated Plaintiff's performance as "satisfactory." Neither of these allegations suffice because neither gives any indication of racial discrimination. The Court must therefore dismiss Plaintiff's complaint.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED** that:

1. Defendant's Motion to Dismiss [ECF No. 42] is **GRANTED**.

2. The Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

3. Plaintiff may file a Second Amended Complaint that comports with the legal conclusions herein no later than **TWENTY (20) DAYS** after the date of this Order.

**DONE** and **SIGNED** in chambers at West Palm Beach, Florida, this 7th day of February, 2013.

Daniel T. K. Hurley
United States District Judge

*Copies provided to counsel of record and all pro se parties*

---

[8]The Court notes that the internal regulations Plaintiff cites state only that the decision to discipline an employee must be *based* on evidence, not that the evidence must be presented to the employee at the time of his termination. See Am. Compl. ¶ 206 [ECF No. 20].